# Dudley *v.* The State.

*Murder.*

(Decided January 20, 1914.  64 South. 309.)

1. *Indictment and Information; Alternative Averments.*—Under section 7149, Code 1907, an indictment charging that a murder was committed by cutting deceased with a knife or by shooting him with a gun, was not demurrable as containing alternative averments.

2. *Evidence; Declarations of Decedent.*—Where, after being shot at by deceased, defendant ran off, procured a gun and returned and shot deceased, declarations made by him when he procured the gun. tending to show his mental attitude at the time, and illustrative of his purpose, were properly admitted.

3. *Same; Res Gestae.*—To be admissible under the principle of res gestæ, acts and declarations must be substantially contemporaneous with the main facts under consideration, and so closely connected with it as to illustrate its character.

4. *Homicide; Evidence.*—Where it was admitted that deceased provoked the difficulty and there was no evidence that defendant even remotely anticipated a difficulty with deceased before he met him on the day of the killing, evidence of the mental attitude of defendant before he met the deceased was immaterial and inadmissible.

APPEAL from Lowndes Circuit Court.

Heard before Hon. A. E. GAMBLE.

Richard Dudley was convicted of murder in the second degree and he appeals. Affirmed.

A. D. PITTS, WILLIAM H. & J. R. THOMAS, and JOSEPH R. BELL, for appellant. No brief reached the Reporter.

R. C. BRICKELL, Attorney General, and W. L. MARTIN, Assistant Attorney General for the State. The indictment is not subject to demurrer.—Sec. 7149, Code 1907; *Hornsby v. State,* 94 Ala. 55. What defendant said when he procured the gun was admissible.—*Domingus v. State,* 99 Ala. 12; *Fonville v. State,* 91 Ala. 39. Defendant's mental attitude previous to the difficulty and at a time when he did not anticipate the difficulty was not admissible.—*Garrett v. State,* 78 Ala. 18; *Cooper v. State,* 63 Ala. 80.

DE GRAFFENRIED, J.—Section 7149 of the present Code provides that when an "offense may be committed by different means, or with different intents, such means or intents may be alleged in the same count (of an indictment) in the alternative." In the instant case the defendant demurred to the indictment upon the ground that it alleged, in the alternative, that the defendant committed the unlawful homicide charged in the indictment, by cutting the deceased "with a knife or by shooting him with a gun." The indictment was not subject to the grounds of demurrer interposed to it. —Code 1907, § 7149, and authorities there cited.

2. The evidence in this case tended to show that the deceased and the defendant engaged in a difficulty; that the deceased, pending this difficulty, went into a house, procured a gun, came out and shot twice at the defendant as he ran off, that the defendant went immediately to another house, procured a gun, and came back to where the deceased was, and that, both parties being armed with guns, the difficulty was renewed, and that the defendant, in the renewed difficulty, shot and killed the deceased. The quo animo of the defendant in procuring the gun, under the circumstances mentioned, was clearly a matter of legitimate inquiry; and, as the decla-

rations of the defendant when he procured the gun tended to show his mental attitude at that time, and to illustrate the purposes for which he procured the gun, we can see no reason why the trial court can be said to have committed error in permitting the declarations of the defendant, when he procured the gun, to be given in evidence to the jury. The declarations of the defendant when he procured the gun were, under some of the tendencies of the evidence, a part of the res gestæ of the homicide.—*Ellis v. State*, 105 Ala. 72, 17 South. 119; 1 Mayf. Dig. p. 82, and subd. 89.

3. The evidence in this case, without dispute shows that the fatal difficulty occurred in the afternoon, and that the deceased brought on the fatal difficulty by upbraiding the defendant for having charged him with keeping a house of ill fame. The deceased was drinking at the time, and there was evidence from which the jury had a right to find that the defendant not only admitted that he had charged that the deceased was keeping a house of ill fame, but that the defendant entered willingly into the difficulty which finally resulted in the homicide.

As the deceased admittedly provoked the difficulty, we cannot see how the mental attitude of the defendant, before he saw the deceased on that day, and before there was any quarrel with the deceased of any sort was admissible in evidence on behalf of the defendant. Whether the defendant, who seems to have taken dinner at Dan Dudley's house on the day of the homicide, was in a good or a bad humor while at said Dan Dudley's house, whether he was mad with any one, or had a difficulty with any one while there, were matters, so far as this record discloses, altogether foreign to any issue presented in this case. It is not claimed that the defendant had even then seen the deceased, or that he then

even remotely anticipated a difficulty of any sort with the deceased, and nothing that occurred at the house of Dan Dudley, at the time referred to, can possibly be so stretched as to bring it within the res gestæ of the homicide.

"Acts or declarations, to be admissible under the principle of res gestæ, must be substantially contemporaneous with the main fact under consideration, and so closely connected with it as to illustrate its character."—1 Mayf. Dig. p. 774, subd. 33.

There is no error in this record. The judgment of the court below is therefore affirmed.

Affirmed.

ANDERSON, C. J., and MCCLELLAN and SOMERVILLE, JJ., concur.