10 So.2d 833

## PUGH v. STATE.

### 3 Div. 845.

Court of Appeals of Alabama.

June 23, 1942.

Rehearing Denied Oct. 6, 1942.

Thos. S. Lawson, Atty. Gen., and John J. Haynes, Asst. Atty. Gen., for the State.

H. C. Rankin, of Brewton, for appellant.

BRICKEN, Presiding Judge.

The indictment in this case was proper in form and substance, and there was no error in the action of the court in overruling defendant's demurrer thereto.

Having examined and carefully considered this record we are of the opinion that the "Statement of Facts" contained in brief of able counsel for appellant, fairly states the salient facts adduced upon the trial, and substantially portrays the whole transaction between the principals in connection with the attendant circumstances upon which this prosecution is based. We here quote, in full, said statement of facts:

"Statement of the Case

"The appellant was indicted at the Fall Term, 1940, of the Circuit Court of Escambia County, Alabama. The offense charged is as follows:

"'* * * Paul Pugh did carnally know, or abuse in the attempt to carnally know, Lucinda Bradberry, a girl over twelve and under sixteen years of age, * * *.'

"Appellant was tried under said indictment, at Brewton, Alabama, on March 18, 1941. On the same day, the cause was submitted to the jury and a verdict was returned in the following words:

"'We the jury find the defendant guilty as charged in the indictment and fix his

punishment of 2 years imprisonment in State penitentiary with leniency.'

"'Ovies White, Foreman.'

"It appears from the evidence that the appellant and the girl, Lucinda Bradberry, were neighbors,—living about seven miles from Castleberry, Conecuh County. They were well acquainted. She called him Paul. It happened that on the afternoon of April 13, 1940, they were both in Evergreen, which is not far from their homes. They met up with each other at the picture show. She made an appointment to meet him at a nearby filling station, to go for a ride. On leaving the show, she went to the filling station and got in his pick-up truck. This was 4:30 to 5:00 o'clock. They rode out a short distance from Evergreen, and came back through town about dark. They then motored on to appellant's home. He parked the truck in front of his house, got out and went in. She remained in the truck and waited for him. After an interval he came out and rejoined her and they resumed their ride. Out from Castleberry motor trouble developed. After a time,—9:00 to 10:00 o'clock, or thereabouts —they reached 'The Oaks,' on the outskirts of Brewton. Some of the details of the occurrences, before 'The Oaks' was reached, were first admitted by the Court and later excluded. While the two were at The Oaks, appellant rented a cabin. As a matter of information, The Oaks is located on the Northern edge of Brewton on U. S. Highway 31, leading from Brewton to Evergreen, via Castleberry. It is about 22 miles from the homes of the two parties. In connection with its business, cabins are available for rent. What occurred at The Oaks is in dispute. Prosecutrix states that she and the appellant spent the night together in one of the cabins, and that they indulged in a single act of sexual intercourse. Appellant denies this. He testifies that he began drinking there and, as a consequence, was afraid to attempt to drive his truck on the highway; that prosecutrix complained of being tired and sleepy, but stated that she didn't want to go home; that thereupon he rented a cabin for her; that he did not stay in the cabin with her, and did not have sexual intercourse with her. He further stated that he remained in his truck, which was parked on the grounds, and there went to sleep and spent the remainder of the night; that about daylight, the prosecutrix came to his truck and awakened him; and that he asked her where they were and that she told him that they were at The Oaks. The Court would not permit any testimony as to what occurred afterwards, except an alleged 'complaint' made by prosecutrix to her mother the following afternoon."

There is no dispute or conflict in the evidence in this case, as to the age of the girl in question. This undisputed evidence shows conclusively that at the time of the alleged commission of the offense charged in the indictment she was fourteen years of age.

The main, principal and controlling question, upon the trial was; did the defendant, a man 27 years of age, have sexual intercourse with said girl fourteen years of age?

The girl testified positively and emphatically that he did have sexual intercourse with her. The State offered other evidence strongly in corroboration. On the other hand, the defendant denied that he had sexual intercourse with the fourteen year old girl, and his testimony as set out in the above quoted "statement of facts" presents his side of the case.

■ From the foregoing conflict and dispute upon the crucial question in the case, of course, a question for the jury to determine was presented, and the court properly submitted said question to the jury.

Several insistences of error are presented on this appeal. The first proposition is stated in appellant's brief as follows:

"The State was permitted to present testimony by the prosecutrix of certain acts and conversations of the two parties in Evergreen early in the afternoon, and several hours before the alleged offense. This was admitted upon the statement of the Solicitor that it was offered for the purpose of showing that appellant 'lured and brought the young girl off.' This prejudicial testimony was admitted over the objections of the appellant. Later, on cross-examination of prosecutrix, appellant sought to establish, by her own account of the circumstances and incidents leading up to the couple's arrival at The Oaks, that her associations with the appellant on the occasion were altogether voluntary on her part; that there was absolutely no ground for the imputation by the Solicitor that appellant enticed, lured, de-

coyed or coerced the young woman in any way. The Court would not permit appellant to go into the facts on that question, and excluded all evidence as to the happenings prior to the arrival at The Oaks. This belated exclusion of evidence did not cure the injury suffered by the appellant. The Solicitor had already planted in the minds of the jury the implication that appellant lured, decoyed, etc. the young lady away."

We do not accord to the foregoing contention. There was no error in this connection. It affirmatively appears that the court of its own motion, through a sense of precaution we apprehend, excluded all the evidence as to the happenings between the parties prior to their arrival at "The Oaks," where the offense complained of in the indictment was alleged to have been committed. The above action of the court, to which no exception was reserved, was innocuous, i.e. it was harmless and resulted in no substantial injury. As we see and construe the evidence in this case, it presents one continuous transaction between the parties involved. If we are correct as to this, the evidence aforesaid was admissible as being of the res gestae. The expression Res Gestae is from the Latin, meaning "things done," and includes the circumstances, facts and declarations incidental to the main fact or transaction, necessary to illustrate its character, and also includes acts, words and declarations which are so closely connected therewith as to constitute a part of the transaction. The expression, res gestae, as applied to a crime, means the complete criminal transaction from its beginning or starting point in the act of the accused until the end is reached. What in any case constitutes the res gestae of a crime depends wholly on the character of the crime and the circumstances of the case. Also continuous acts or a series of events, leading up to and necessary or helpful to understanding of the main event, and tending to explain the conduct and purposes of the parties, are admissible as res gestae, if closely connected in time. Such acts or circumstances transpiring before the commission of the crime are admissible.

Appellant's second insistence of error has reference to the action of the court in permitting the State to offer testimony tending to show flight of the defendant. In a prosecution for crime, it is permissible to prove flight, or attempted flight of the accused and the facts and circumstances connected therewith. The action and ruling of the trial court as to this was clearly free from error. See innumerable authorities cited in Vol. 6, Alabama Digest, Criminal Law, ☞351(3).

The next insistence is the alleged separation of the jury. Nothing is presented for review on this question as no exception was reserved to the action of the court in this instance. Moreover, the occurrence referred to by appellant as to this, as disclosed by the record, affirmatively shows that the accused suffered no injury.

The consent or voluntary actions of the 14 year old girl in question was not a constituent element of the crime charged. Whether said girl consented to the alleged intercourse is not material and the trial court properly so held.

The remaining questions upon this appeal allude to the action of the court in refusing to defendant several special written charges requested by him. This court has examined each of said refused charges and ascertain and hold that such of them which properly state correct propositions of law were each fairly and substantially covered by the oral charge of the court and by the numerous charges "given" at the instance or request of defendant. We refrain from prolonging this opinion by a detailed discussion in this connection as it would serve no good purpose to do so.

As stated hereinabove the testimony in the case was in conflict, rendering the court without authority to direct a verdict for the defendant, therefore no error prevailed in the refusal to defendant the requested affirmative charge.

The trial court properly and without error overruled and denied defendant's motion for a new trial.

No reversible error appearing upon the trial, and there being no error apparent on the record, it follows that the judgment of conviction from which this appeal was taken must be affirmed. It is so ordered.

Affirmed.